**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|                                    |   |                        |
|------------------------------------|---|------------------------|
|                                    | * |                        |
| RIESHA WILLIAMS,                   |   |                        |
|        Plaintiff,                  | * |                        |
|                                    |   |                        |
|        v.                          | * |   Civil No. ELH-15-2466 |
|                                    |   |                        |
| DEE MIRACLE AUTO GROUP LLC, et al. | * |                        |
|        Defendants.                 |   |                        |
|                                    | * |                        |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned to review plaintiff's Motion for Default Judgment and to make recommendations concerning damages, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302. (ECF No. 26.) Currently pending is plaintiff's Motion for Default Judgment ("Motion") (ECF No. 25). No hearing is necessary. See Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons discussed below, I respectfully recommend that plaintiff's Motion (ECF No. 25) be GRANTED IN PART and DENIED IN PART, and that relief be awarded as set forth herein.

## I.   Procedural Background

Plaintiff filed her Complaint against Dee Miracle Auto Group, LLC ("Dee Miracle") and Demont Raymond Bell ("Bell" or "Mr. Bell") (collectively "defendants") on August 20, 2015 (ECF No. 1), and both defendants were served with process on October 7, 2015. (ECF Nos. 5, 6.) Defendants did not respond to the Complaint, and, on November 2, plaintiff moved for an entry of default as to both defendants. (ECF No. 7.) The Clerk of Court entered default against

both defendants on November 5, 2015.[1]  Plaintiff filed her first Motion for Default Judgment on December 10.  (ECF No. 9.)  On December 15, Judge Hollander referred plaintiff's Motion to the undersigned to prepare a report and recommendation.  (ECF No. 11.)

On December 30, 2015, the Court received a letter from defendant Demont Bell in which Mr. Bell alleged that service was improper and asked for "the opportunity to get a lawyer and defend [himself] at a hearing."  (ECF No. 13.)  Judge Hollander construed defendant Bell's letter as a Motion to Vacate Clerk's Entry of Default.  (ECF No. 15.)

For the reasons stated in her Memorandum, Judge Hollander vacated the court's entry of default as to Mr. Bell.  (ECF Nos. 15, 16.)  Given the requirement that corporate defendants be represented by counsel, however, Judge Hollander denied without prejudice the motion to vacate as to defendant Dee Miracle Auto Group, LLC and gave this defendant thirty (30) days from the date of her Order in which to move for reconsideration.  Loc. R. 101.1(a).  (ECF Nos. 15, 16.)  Plaintiff then filed a Motion for Reconsideration (ECF No. 17) of Judge Hollander's Order vacating the entry of default against defendant Bell, and Judge Hollander denied plaintiff's motion on February 1, 2016.  (ECF No. 18.)  As the entry of default as to Mr. Bell had been vacated, plaintiff's original Motion for Default Judgment was denied without prejudice.  (ECF No. 19.)

Defendant Dee Miracle Auto Group, LLC has remained in default since the clerk's original entry of default on November 8, 2015.  (ECF No. 8.)  While the entry of default as to defendant Bell was vacated, Mr. Bell again failed to file a responsive pleading.  Subsequently, plaintiff requested that an order of default be entered as to Mr. Bell.  (ECF No. 21.)  Judge Hollander denied plaintiff's request, but expressly directed Mr. Bell to file a responsive pleading

---

[1]  The Clerk's original entry of default (ECF No. 8) contained a typographical error which was corrected on December 15, 2015.  (ECF No. 10.)

by March 23, 2016.  (ECF No. 22.)  When defendant failed to comply with Judge Hollander's order, plaintiff again moved for an entry of default as to Mr. Bell (ECF No. 23), and on April 26, 2016, the clerk of court ordered an entry of default against defendant Bell.  (ECF No. 24.) Plaintiff filed the pending Motion on April 28, 2016.  (ECF No. 25.)  As default has been entered against both defendants, plaintiff's Motion is ripe for adjudication.

## II.  **Plaintiff's Factual Allegations**

A common set of facts supports each of the causes of action set forth in plaintiff's complaint.  (ECF No. 1.)  By virtue of the clerk's entry of default, the court accepts as true the well-pleaded factual allegations in the complaint as to liability.  See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001).

Plaintiff Riesha Williams ("plaintiff") is a resident of Suitland, Maryland.  (ECF No. 1 at ¶ 3.)  Defendant Dee Miracle Auto Group, LLC is a limited liability company organized under the laws of Maryland, with a place of business at 900 Larchmont Avenue, Capitol Heights, MD 20743.  (Id. at ¶ 4.)  Defendant Demont Raymond Bell is the "primary owner" of Dee Miracle. (Id. at ¶ 5.)  Plaintiff's Supplemental Memorandum indicates that Mr. Bell also conducts business as a sole proprietorship under the name "Dee Miracle Auto Group."  (ECF No. 14-9.)

On March 11, 2015, plaintiff entered into a consumer credit transaction with one or both defendants arising out of plaintiff's purchase of a 2002 Nissan Altima ("the Vehicle") from defendants.[2]  (ECF No. 1 at ¶ 7.)  The parties' agreement is memorialized in three separate documents: the Payment Arrangement Contract for Purchase of a Car or SUV ("Contract") (ECF

---

[2] While the date on the Contract is March 11, 2014, the date on the Bill of Sale is March 11, 2015, and all dates on the Payment Plan Sheet are for 2015 (beginning in April 2015).  (ECF Nos. 1-4, 1-5, 1-6.)  The 2014 date thus appears to be a typographical error only, as plaintiff alleges in the complaint—and which the court must therefore accept as true.  (See ECF No. 1 at ¶ 10.)

No. 1-4); the Bill of Sale (ECF No. 1-5); and the Payment Plan Sheet (ECF No. 1-6).  (See also ECF No. 25 at 6-7.)  It is not entirely clear from whom the car was purchased or to whom payment was made and future payment owed.  The Contract does not mention "Dee Miracle Auto Group, LLC" or "Dee Miracle Auto Group."  On the line above "Dealer's Signature" is what appears to be the signature of Demont Bell.  (Id.)  The Bill of Sale is printed on the letterhead of "Dee Miracle Auto Group"—but there is no reference to its registration as an LLC.  (ECF No. 1-5.)  The "Odometer Disclosure Statement" contains the name and signature of Demont Bell.  (Id.)  Only plaintiff's name appears on the Payment Plan Sheet.  (ECF No. 1-6.)

The Contract states that the total vehicle price was $5,500.00.  (ECF No. 1-5.)  In addition, the transaction included a "20% Finance Charge" on the purchase price, totaling $1,100.00.  (Id.)  The Contract states that plaintiff made a down payment of $3,000.00, leaving the "Total Balance Due" as $3,600.00.  (Id.)  While the Bill of Sale reflects the $3,000.00 down payment and that the "Total Owed" was $3,600.00, the Bill of Sale also indicates that plaintiff paid $200.00 in "Processing Fees," making the total "Cash Paid" at the time of closing $3,200.00.  (ECF No. 1-6.)  The Contract does not mention or define the term "Processing Fees."  (See ECF No. 1-5.)  Plaintiff claims that the down payment amounted to $3,200.00 and that the $3,000.00 down payment indicated on the documents is incorrect.  (ECF No. 1 at ¶¶ 10-11.)

The Contract provides for periodic payments of $200.00 by plaintiff to defendants.  (ECF Nos. 1-4, 1-6.)  The Contract, however, contains contradictory terms regarding the frequency of payments.  (Id.)  Specifically, the Contract states that "[plaintiff] agrees to make monthly payments of $200 beginning 3/27/15 and continuing every month until the balance is paid in full."  (ECF No. 1-4) (emphasis added).  At the same time, the Bill of Sale contains a handwritten note reading, "200 biweekly / comes on the 3rd / to make both / payments."  (ECF

No. 1-5) (emphasis added).  Similarly, the Payment Plan Sheet reads "$200 <u>biweekly</u>" on the upper part of the sheet and lists eighteen (18) biweekly dates from "4/3/15" to "11/27/15" on which payment was anticipated.  (ECF No. 1-6) (emphasis added).  The Payment Plan Sheet reflects only one cash payment of $400.00 made on April 3, 2015.  (<u>Id</u>.)

Plaintiff alleges that defendants violated the federal Truth in Lending Act by failing to use statutorily required language in the agreement, by presenting contradictory terms in the agreement, and by failing to make mandatory disclosures.  (ECF No. 1 at ¶¶ 1-18.)  Plaintiff also alleges that defendants did not own the vehicle at the time of purchase, but that defendants represented that they were capable of transferring ownership to plaintiff.  (ECF No. 1 at ¶¶ 20-22.)  In addition, plaintiff claims that defendant failed to register the vehicle with the Maryland Motor Vehicle Administration ("MVA") on plaintiff's behalf, as defendants agreed to do at the time of sale/purchase.  (<u>Id</u>. at ¶ 32.)  Moreover, plaintiff alleges that at some point subsequent to the sale/purchase, defendants repossessed the vehicle and retained all payments made by plaintiff.  (<u>Id</u>. at ¶ 35.)  Plaintiff alleges that by falsely representing defendants' ownership and by failing to register the car on plaintiff's behalf as agreed, defendants defrauded plaintiff and violated the Maryland Consumer Protection Act.  (<u>Id</u>. at ¶¶ 19-36.)

### III.   <u>Legal Standard for Entry of Default Judgment</u>

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability.  <u>Ryan v. Homecomings Fin. Network</u>, 253 F. 3d 778, 780-81 (4th Cir. 2001).  It remains for the court, however, to determine whether these unchallenged factual allegations constitute a legitimate cause of action.  <u>Id</u>.  If the court determines that liability is established, the court must then determine the appropriate amount of

damages.  Id.  The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.  See, e.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154-155 (2d Cir. 1999).

IV.    **Defendants' Liability**

A.    **Truth in Lending Act ("TILA")**

The federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., seeks "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit…"  15 U.S.C. § 1601(a).  To that end, § 1638 of TILA requires creditors to disclose nineteen different items in each consumer credit transaction.  15 U.S.C. § 1638(a).  See also Davis v. Second Chance Pre-Owned Auto Sales, LLC, 2015 WL 2137272, at *2 (S.D.W.Va. May 7, 2015).  These disclosures include: the "amount financed;" the "the finance charge;" the "annual percentage rate;" the "total of payments;" "total sale price;" and "descriptive explanations" of these terms.   15 U.S.C. § 1638(a).

Under TILA, a "creditor" is a person "who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness."  15 U.S.C. § 1602(g).  A consumer transaction under the act is one in which "credit is offered or extended [to] a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes."  15 U.S.C. § 1602(i).  Here, plaintiff

alleges that defendants are "creditors" within the definition of TILA.  (ECF No. 1 at ¶ 5.) Plaintiff also alleges that she obtained the credit at issue to purchase the vehicle for personal, family, and household purposes.  (Id. at ¶ 7.)  Accordingly, defendants' actions were subject to TILA's disclosure requirements.  15 U.S.C. § 1638(a).

Plaintiff alleges that defendants failed to make numerous disclosures required by TILA. In particular, plaintiff alleges that defendants failed to state, inter alia: the "amount financed" in violation of § 1638(a)(2)(A); the consumer's right to obtain, upon written request, a written itemization of the amount financed, in violation of § 1638(a)(2)(B); the "finance charge" in violation of § 1638(a)(3); the "annual percentage rate" in violation of § 1638(a)(4); the "total of payments" in violation of § 1638(a)(5).  These terms[3] are not used—nor are descriptive explanations thereof provided—in the parties' agreement.  (See ECF Nos. 1-4, 1-5, 1-6.) Defendants, therefore, are liable for violating TILA, and plaintiff is entitled to default judgment on this claim.

### B.  Common Law Fraud

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for fraud claims: "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "These circumstances include 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  Marshall v. James B. Nutter & Co., 816 F. Supp. 2d 259, 267 (D. Md. 2011) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)).

Here, plaintiff merely asserts that, "[t]he defendants made the false representations that they owned the Vehicle and were capable of transferring ownership to Plaintiff for the purpose

---

[3] While the words "Finance Charge" are expressed in the Contract, they appear only in the phrase "Plus 20% Finance Charge of $1100."  (ECF No. 1-4.)  Even if this usage of the term were compliant with TILA, at no point is the "Finance Charge" expressed as an annual percentage rate.

of defrauding." (ECF No. 1 at ¶ 22.) The complaint does not state the time, the place, or the identity of the person making the allegedly fraudulent statements. <u>Marshall</u>, 816 F. Supp. 2d at 267. (<u>See</u> ECF No. 1 at ¶¶ 19-26.) Thus, plaintiff's complaint fails to satisfy Rule 9(b)'s heightened pleading requirement, and plaintiff is not entitled to default judgment on her common law fraud claim.

### C. Maryland Consumer Protection Act ("MCPA")

The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices" and lists fourteen categories of proscribed conduct. Md. Code Ann., Com. Law § 13-301. <u>See</u> <u>Marshall</u>, 816 F. Supp. 2d at 266. Specifically, the MCPA prohibits any: "False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." Md. Code Ann., Com. Law § 13-301(1).

Plaintiff alleges that defendants violated the MCPA by "failing to disclose to Plaintiff accurate financial terms of the transaction;" "selling Plaintiff an automobile that they did not own;" and "retain[ing] the money paid by Plaintiff and repossessing [the Vehicle]." (ECF No. 1 at ¶ 31.) Here, it is clear that defendants "fail[ed] to disclose to Plaintiff accurate financial terms of the transaction." (Id.) The Contract, Bill of Sale, and Payment Plan Sheet contain contradictory information regarding the financial terms of the transaction. (ECF Nos. 1-4, 1-5, 1-6.) The contradictory information is, at the very least, misleading, and, accepting as true the well-pled allegations in the complaint, plaintiff was deceived by defendants. (ECF No. 1 at ¶ 32.) Accordingly, plaintiff is entitled to default judgment on her MCPA claim on this basis.

Plaintiff further alleges that defendants violated the MCPA by "selling Plaintiff an automobile that they did not own" and by "retain[ing] the money paid by Plaintiff and

repossessing [the Vehicle]."   (ECF No. 1 at ¶ 31.)   These allegations sound in fraud and are therefore subject to Rule 9(b)'s heightened pleading standard.  Fed. R. Civ. P. 9(b).  See Combs v. Bank of Am., N.A., 2015 WL 5008754, at *6 (D. Md. Aug. 20, 2015) ("Because a claim for unfair or deceptive trade practices under the MCPA sounds in fraud, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b).")   As with plaintiff's common law fraud claim discussed above, the complaint does not state the time, the place, or the identity of the person making the allegedly fraudulent statements.  Marshall, 816 F. Supp. 2d at 267.   Accordingly, the allegations set forth in the complaint fail to satisfy this heightened standard, and plaintiff is not entitled to judgment on the MCPA claim based on these factual allegations.[4]

## V.    Plaintiff's Damages

Plaintiff claims that defendants' actions caused her direct and indirect monetary damages (including temporary loss of employment), as well as emotional distress.[5]   (ECF No. 1 at ¶ 36.) Plaintiff requests a total award of $30,798.50 including:

> $2,000.00 in statutory damages (ECF No. 25 at 8);
>
> $9,937.50 in actual damages, including:
>
>> $3,600.00 for the amount paid to defendants (ECF No. 25 at 12);
>>
>> $6,337.50 for lost wages (ECF No. 25 at 14-15);

---

[4] Even if the Complaint satisfied Rule 9(b)'s heightened pleading standard, it cannot be said that defendants' repossession of the vehicle—a provision expressly set forth in the contract—constitutes, in and of itself, an unfair or deceptive business practice.   (See ECF No. 1-4.)   Repossession is undoubtedly a remedy contemplated under Maryland commercial law.  See Md. Code Ann., Com. Law § 2-703.

[5] While plaintiff requests emotional distress and damages in the complaint (ECF No. 1 at ¶ 36), plaintiff has neither alleged nor submitted evidence of the nature of her suffering or any treatment she underwent as a result. Accordingly, plaintiff is not entitled to damages for any emotional distress she may have suffered.  See generally Peckey v. Bank of Am., N.A., 2015 WL 1622967, at *5 (D. Md. Apr. 10, 2015) (explaining that under Maryland law, emotional distress damages must be proximately caused by the wrongful conduct).

$5,000.00 in punitive damages (ECF No. 25 at 14);[6]

$133.50 in costs (ECF No. 25-2 at 3); and

+        $13,727.50 in attorney's fees (ECF No. 25-2 at 2).

_____

TOTAL    **$30,798.50**[7]


**A.  TILA Damages**

Under § 1640(a) of TILA, an individual plaintiff may recover any actual damages sustained as a result of defendant's violation of the statute, as well as statutory damages equal to "twice the amount of any finance charge in connection with the transaction."  15 U.S.C. § 1640(a)(2)(A)(i).[8]  See also Davis v. Second Chance Pre-Owned Auto Sales, LLC, 2015 WL 2137272, at *2 (S.D.W. Va. May 7, 2015); Regius v. Starmax Fin., Inc., 2015 WL 3830364, at *3 (M.D. Fl. June 19, 2015).  A prevailing plaintiff is also entitled to an award of costs and a "reasonable attorney's fee as determined by the court."  15 U.S.C. § 1640(a)(3).

Here, the amount of the finance charge as stated in the parties' agreement was $1,100.00.  Plaintiff is thus entitled to a statutory award of **$2,200.00**—twice the finance charge incorporated in the transaction.  15 U.S.C. § 1640(a)(2)(A)(i).

_____

[6] Punitive damages are not available under TILA.  See 15 U.S.C. § 1640 (no statutory provision for punitive damages); Buick v. World Sav. Bank, 637 F. Supp. 2d 765, 776 (E.D. Cal. 2008) (striking plaintiffs' request for punitive damages under TILA).  Nor are punitive damages available under the MCPA.  See Frazier v. Castle Ford, Ltd., 430 Md. 144, 164, 59 A.3d 1016, 1027 (2013); Williams v. Home Properties, L.P., 2015 WL 3889783, at *4 (D. Md. June 23, 2015).  As plaintiff is not entitled to judgment on her fraud claim (under which punitive damages would be available), there is no cause of action alleged which warrants an award of punitive damages.

[7] The "total demand of $30,799.10" stated in plaintiff's Motion appears to be a miscalculation of the figures noted above.  (ECF No. 25 at 15.)

[8] Plaintiff mistakenly bases her request for $2,000.00 in statutory damages on 15 U.S.C. § 1640(a)(2)(A)(ii), which deals with consumer leases—and not on the more general § 1640(a)(2)(A)(i).  The transaction at issue here is repeatedly referred to as a "purchase" or "sale"—not a lease.  (See ECF No. 9-6 at ¶3.) The appropriate measures of damages is thus "twice the amount of any finance charge in connection with the transaction," as set forth in § 1640(a)(2)(A)(i).

Plaintiff also seeks to recover $3,600.00 for her actual damages incurred as a result of defendants' violation of TILA.[9]   A person who violates TILA is liable for "any actual damage sustained by such person **as a result of the failure**" to comply with the statute.   15 U.S.C.A. § 1640(a)(1) (emphasis added).   Courts interpreting this statutory language have required a plaintiff seeking actual damages to show "a causal link between the financing institution's noncompliance and his damages."   Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001).   See also Fisher v. Am. Gen. Fin. Co., 52 F. App'x 601, 607 (4th Cir. 2002) ("To establish actual damages from a TILA violation, a plaintiff must prove that the violation proximately caused his damages");   Price v. Berman's Auto., Inc., 2015 WL 5720429, at *3 (D. Md. Sept. 28, 2015) ("Where a violation is content based, it makes sense to require a plaintiff to prove that he suffered damages because he relied to his detriment on the inadequate content of the disclosures").

Here, it is not apparent how defendants' failure to comply with the disclosure requirements of TILA caused plaintiff's actual damages.   While plaintiff may have suffered an actual monetary loss (her $3,200.00 down payment and her $400.00 subsequent payment), plaintiff's Complaint does not suggest that this loss was caused by defendants' failure to provide the information statutorily required under TILA.   To the contrary, plaintiff's Supplemental Memorandum suggests that plaintiff understood that she was obliged to pay $200.00 per month under the parties' agreement: "Plaintiff did read the TILA disclosures located in the financing document [ECF No. 1-4].   She also understood that the monthly payment was to be $200.00…" (ECF No. 25 at 9.)   While there is, as noted above, a discrepancy between the Contract, Bill of Sale, and Payment Plan Sheet as to the frequency of payments, neither the Complaint nor

---

[9] This amount includes the $3,200.00 paid to defendants at the time of closing and the $400.00 payment made on April 3, 2015.  (ECF No. 25 at 12.)

plaintiff's Supplemental Memorandum indicates that plaintiff's ultimate decision to stop making payments on the Vehicle was the result of defendants' noncompliance with TILA.  (See ECF No. 1 at 2-3; ECF No. 25 at 9.)

To the contrary, the affidavit which plaintiff attached to her original Motion for Default Judgment indicates that plaintiff discovered defects with the car almost immediately after taking possession.  (ECF No. 9-6 at ¶¶ 4, 6.)  Although plaintiff brought these problems to defendants' attention promptly, "the defendants were unable or unwilling to correct the items."  (Id. at ¶ 5.) Plaintiff then stopped making payments on the vehicle, and defendants repossessed the vehicle.[10] (Id. at ¶ 10.)  Fatal to plaintiff's request for actual damages, these allegations indicate that the cause of plaintiff's monetary loss was her decision to stop making payments on the Vehicle because of its poor condition—not defendants' noncompliance with TILA.[11]

Nor can it be said that plaintiff's alleged damages of $6,337.50 for ten weeks of lost wages were "proximately caused" by defendants' violation of TILA.  Price, 2015 WL 5720429, at *3.  As stated above, defendants' repossession of the Vehicle was the result of plaintiff's willful non-payment of the loan—not defendants' TILA violations.   While defendants' repossession of the Vehicle may have made it more difficult for plaintiff to commute to work for a limited amount of time, plaintiff's alleged ten weeks of lost wages were not "proximately caused" by defendants' TILA violations.  Accordingly, plaintiff is not entitled to an award of actual damages on her TILA claim.

---

[10] Defendants' right to repossess the Vehicle is stated in the Contract: "Any payment made more than 10 days late is grounds for repossession, in the event this happens, there will be no return for payments made." (ECF No. 1-4.)

[11] While these allegations suggest that plaintiff may be entitled to a contract-based remedy, the Complaint does not include counts for breach of contract, breach of warranty, or equitable remedies such as unjust enrichment.

### B.  **Fraud Damages**

As plaintiff has failed to state a claim for common law fraud, plaintiff is not entitled to an award of damages on this basis.

### C.  **MCPA Damages**

Under the MCPA, a plaintiff may recover actual damages and attorney's fees.  Md. Code Ann., Com. Law § 13-408(b).  Under the MCPA, "an individual may only bring a claim if she can 'establish the nature of the actual injury of loss that he or she allegedly sustained as a result of the prohibited practice.'"  Marshall, 816 F. Supp. 2d at 266 (quoting Lloyd v. General Motors Corp., 397 Md. 108, 916 A.2d 257, 280 (2007)).  See also Tepper v. Quality Painting & Plastering, Inc., 2016 WL 770030, at *2 (Md. Ct. Spec. App. Feb. 29, 2016) (affirming jury verdict finding violation of the MCPA, but awarding no damages "as a result of" the violation).

The same analysis discussed above with respect to TILA damages applies here.  None of plaintiff's filings explains how plaintiff's actual damages were the result of defendants' "fail[ure] to disclose to Plaintiff accurate financial terms of the transaction."  (ECF No. 1 at ¶ 31.)  Rather, based on plaintiff's Supplemental Memorandum, it appears that plaintiff understood her obligation to make payments on the Vehicle.  (ECF No. 25 at 9.)  When she declined to make payments on account of the car's poor condition, defendants repossessed the vehicle.  (ECF No. 9-6.)  Accordingly, plaintiff is not entitled to an award of actual damages based on defendants' violation of the MCPA.


## VI.   **Attorney's Fees**

Based on defendants' violation of TILA, plaintiff is entitled to an award of costs and a "**reasonable** attorney's fee as determined by the court."   15 U.S.C. § 1640(a)(3) (emphasis

added).[12]   Here, plaintiff requests an award of $133.50 in costs (ECF No. 25-2 at 3) and $13,727.50 in attorney's fees (ECF No. 25-2 at 2).   I recommend that the court grant plaintiff's request for **$133.50** in costs, but that the court grant only **$3,145.00** in attorney's fees.   My reasoning is set forth below.

In order to properly determine an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" by multiplying the number of hours reasonably expended times a reasonable hourly rate.   Blum v. Stenson, 465 U.S. 886, 888 (1984); Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008).   The plaintiff must demonstrate that "the number of hours for which [it] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary."   Victor Stanley, Inc. v. Creative Pipe, Inc., 2011 WL 2552472, at *3 (D. Md. Jan. 24, 2011) (internal quotation marks omitted).

Counsel for plaintiff has filed three requests for fees, the second and third of which contain conflicting information regarding the total number of hours worked.   (See ECF Nos. 9-7, 14-2, 25-2) (detailing 32.3 hours of work allegedly performed, but stating "19 hours x $425.00 per hour equals: $13,727.50.")   This is but one of the many deficiencies or errors in plaintiff's counsel's submissions.   Those submissions: only sparingly refer to binding Maryland state, federal, or Fourth Circuit case law, despite the existence of local precedent on legal issues presented (see ECF Nos. 14, 25) (only 10 of 28 cases cited in plaintiff's first Supplemental Memorandum, and only 7 of 22 cases cited in plaintiff's second Supplemental Memorandum, are Maryland or Fourth Circuit cases); erroneously point to statutory sections not at issue (see, e.g., ECF No. 25 at 8) (citing § 1640(a)(2)(A)(ii), which deals with consumer leases—not at issue here—as the measure for plaintiff's statutory damages request); misstate plaintiff's name (see, e.g., ECF No. 14 at 10) (referring to plaintiff Riesha Williams as "Ms. Davis"); are incomplete

---

[12] Plaintiff is alternatively entitled to attorney's fees under the MCPA.  Md. Code Ann., Com. Law § 13-408(b).

(see, e.g., ECF No. 14 at 4) ("Attached is Exhibit ??" ); are replete with factual and/or typographical errors (see, e.g., ECF No. 25 at 11) ("Plaintiff did not know that Defendants would not pay the State of Georgia the Title fee…"); and contain miscalculations (see, e.g., ECF No. 25 at 15) (miscalculating the figures in plaintiff's total demand).

In light of the foregoing, I do not find that counsel's request for $13,727.50 for 32.3 hours of work is "a reasonable attorney's fee."  15 U.S.C. § 1640(a)(3).  Based upon my review of this case, an award of attorney's fees must include several reductions to account for excessive time spent by plaintiffs' counsel on several activities including: obtaining the "MVA vehicle history in Edgewater"; researching and drafting the complaint; preparing the in forma pauperis motion; communicating with the process server; communicating with plaintiff regarding the location and status of defendants' business; preparing the motion for default judgment; and preparing the supplemental memorandum.  With these reductions, I recommend an award of attorney's fees for 7.4 hours of work performed.  At counsel's requested $425.00 hourly rate, this amounts to $3,145.00.

I note that this award of attorney's fees is consistent with an award rendered in this circuit in a similar case involving a default judgment premised on TILA violations.  In Davis v. Second Chance Pre-Owned Auto Sales, LLC, No. 2:14-CV-26957, 2015 WL 2137272, at *4 (S.D.W. Va. May 7, 2015), a case which also involved TILA violations in connection with a vehicle sale, the court awarded a total of $5,067.57 in attorney's fees.  Id.  This figure included $4,129.57 for 12.7 hours of work performed by the lead attorney on the case.[13]  Davis, No. 2:14-CV-26957, S.D. W. Va. at ECF No. 29-2 at 3.

Other courts have recommended even lower awards of attorney's fees in similar cases.  In another factually analogous default judgment case which involved TILA violations in connection

---

[13] Paralegals and one other attorney (who performed only .2 hours of work) also worked on the case.

with a vehicle sale, the court rejected counsel's request for $3,500.00 in attorney's fees and awarded "a reasonable fee of no more than $2,000.00." Regius, 2015 WL 3830364, at *5.

In light of awards rendered in similar cases and for the reasons noted above, the $3,145.00 award of attorney's fees recommended herein is reasonable.

**VII.**    **Conclusion**

For the foregoing reasons, I respectfully recommend that:

1.    The Court GRANT plaintiff's Motion for Default Judgment (ECF No. 25);

2.    The Court award plaintiff $2,200.00 in statutory damages;

3.    The Court award plaintiff $133.50 in costs;

4.    The Court award plaintiff $3,145.00 in attorney's fees;

5.    The Court ENTER default judgment jointly and severally against defendants Dee Miracle Auto Group, LLC and Demont Raymond Bell in the amount of $5,478.50.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendants at the addresses listed on plaintiff's Complaint. (ECF No. 1.)

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date:   June 22, 2016                            _____/s/_____
                                                 Beth P. Gesner
                                                 United States Magistrate Judge